

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN, TEXAS 78711

CRAWFORD C. MARTIN
ATTORNEY GENERAL

August 14, 1967

Honorable R. L. Coffman                Opinion No. M-125
Administrator
Texas Employment Commission
TEC Building
Austin, Texas 78701                    Re:  Whether the Texas
                                            Employment Commission
                                            may pay a portion of
                                            the premiums for group
                                            insurance under the
                                            provisions of Subsection
                                            (a) of Section 1 of
                                            Article 3.51 of the In-
                                            surance Code, as amended
                                            by S.B. 294, Acts of the
Dear Mr. Coffman:                           60th Legislature.

        Reference is made to your letter in which you requested
an opinion from this office pertaining to the captioned matter.
We quote from your letter in part as follows:

        "Presently the Texas Public Employees Association
    is the policyholder for our group insurance.  The law
    now provides that policies may be issued to an associa-
    tion of public employees.  Accordingly, the questions
    we would like for your office to answer are as follows:

        "(1) Whether TEC may contribute to the premiums
             of its employees for group insurance.

        "(2) Whether such contributions can be made under
             our present arrangement with TPEA and our
             insurance carrier, Republic National Life
             Insurance Company.

        "We feel that there would be much advantage to con-
    tinuing with our present arrangement since it would avoid
    the necessity of making a new contract involving only
    TEC employees and would probably be a better contract than
    we could negotiate separately."

-570-

It is assumed that question number (1) is governed by your captioned question, i.e., the contributions by TEC to the premiums of its employees for those types of group insurance covered by Article 3.51. You will note that Senate Bill 294, 60th Legislature, Regular Session, p. 1007, Chapter 437, also amends Article 3.50 of the Insurance Code. It is this Article that is applicable to group life insurance.

Subsection (a), Section 1, Article 3.51 of the Texas Insurance Code, as amended by Senate Bill 294 is as follows:

"(a) The State of Texas and each of its political, governmental and administrative subdivisions, departments, agencies, associations of public employees, and the governing boards and authorities of each state university, colleges, common and independent school districts or of any other agency or subdivision of the public school system of the State of Texas are authorized to procure contracts insuring their respective employees or any class or classes thereof under a policy or policies of group, health, accident, accidental death and dismemberment, disability income replacement and hospital, surgical and/or medical expense insurance. The dependents of any such employees may be insured under group policies which provide hospital, surgical and/or medical expense insurance. The employees contributions to the premiums for such insurance issued to the employer or to an association of public employees as the policyholder may be deducted by the employer from the employees salaries when authorized in writing by the respective employees so to do. The premium for the policy may be paid in whole or in part from funds contributed by the employer or in whole or in part from funds contributed by the insured employees."

The Texas Employment Commission is a state agency and its employees are state employees (Attorney General's Opinion No. V-427, 1947). As you intimate in your letter, the funds utilized by the Texas Employment Commission in the administration of the Texas Unemployment Compensation Act are furnished by the federal government. See 42 U.S.C.A., Section 502. The applicable Texas statute pertaining to these funds, Article 5221b, Vernon's Civil Statutes, provides in Section 11 thereof, in part, the following:

"(a) Special Fund: There is hereby created in the State Treasury a special fund to be known as the Unemployment Compensation Administration Fund. . . . All moneys in this fund shall be deposited, administered and

disbursed, in the same manner and under the same con-
ditions and requirements as if provided by law for other
special funds in the State Treasury. . . ."

Inasmuch as these federal funds are deposited in the State
Treasury, they are state funds (Attorney General's Opinion No.
C-530, 1965). With reference to these public funds or moneys
and the expenditure of same, Section 51 of Article III, Consti-
tution of Texas, provides, in part, as follows:

"The Legislature shall have no power to make
any grant or authorize the making of any grant of
public moneys to any individual, association of
individuals, municipal or other corporations what-
soever. . . ."

The Supreme Court of Texas, in the case of State v. City
of Austin, 160 Tex. 348, 331 S.W.2d 737 (1960), in speaking of
Section 51, of Article III, Constitution of Texas, said in part:

". . . the purpose of this section . . . of the Con-
stitution is to prevent the application of public funds
to private purposes. . . ."

It would therefore appear that your question number (1)
resolves itself into this query: Is the use of public moneys
for TEC employees group insurance premium payments violative
of the Constitution because it constitutes an application of
public funds to a private purpose? We think that it is not.

In Attorney General's Opinion No. V-1067, (1950), this
office said in part:

"In determining whether an expenditure of public
moneys constitutes a gift or a grant of public moneys,
'the primary question is whether the funds are used
for a "public" or a "private" purpose. The benefits
of the State from an expenditure for a "public purpose"
is in the nature of consideration and the funds expended
are therefore not a gift even though private persons
are benefited therefrom.'"

The determination of what constitutes a "public purpose"
for which a state may expend moneys has been held to be
primarily a legislative function, subject to review by the
courts when abused, and the determination of the legislative

body has been held to be not subject to reversal except in instances where such determination is palpably and manifestly arbitrary and incorrect. State ex rel. McClure v. Hagerman, 155 Ohio St. 320, 98 N.E.2d 835 (1951).

The Texas Supreme Court, in the case of Byrd v. City of Dallas, et al, 118 Tex. 28, 6 S.W.2d 738 (1938), said the following:

"... It is academic to say the Legislature has power to pass any law which its wisdom suggests that is not forbidden by some provisions of the Constitution (federal or state). If the pension provided for in this act is a gratuity or donation to the beneficiary, it is clearly forbidden by the fundamental law. On the other hand, if it is a part of the compensation of such employee for services rendered to the city, or if it be for a public purpose, then clearly it is a valid exercise of the legislative power."

You will note that Senate Bill 294 amended Subsection (a), Section 1, Article 3.51 of the Insurance Code by striking the language "provided, however, no state funds shall be used to procure such contracts, nor shall any state funds be used to pay premiums under said contracts of insurance," and inserting in lieu thereof the following: "the premium for the policy may be paid in whole or in part from funds contributed by the employer or in whole or in part from funds contributed by the insured employees." You will further note that the caption of Senate Bill 294 reads as follows:

"AN ACT amending Paragraph (b) of Subsection (3) of Section 1 of Article 3.50 of the Insurance Code and amending Subsection (a) of Section 1 of Article 3.51 of the Insurance Code to permit the expenditure of state funds to pay all or any portion of the premiums for certain group insurance contracts covering employees of the state; and declaring an emergency."

The Legislature had made its intention abundantly clear in Senate Bill 294, i.e., to permit the expenditure of state funds to pay all or any portion of the premiums for certain group insurance contracts covering employees of the state. The Legislature has the authority to provide compensation for state employees for services rendered. In the opinion of this office,

the expenditure of state funds to pay the premiums for certain group insurance contracts of state employees as a part of their compensation is within the realm of public purpose.

Appleman's Insurance Law and Practice, Volume I, pages 53, 54, provides in part:

"There is no question that a private employer may take out a group policy for the benefit of his employees.  Some question has been raised as to the right of a social or political group to take out such a contract on the theory that it might constitute a diversion of the funds of taxpayers to an unauthorized purpose, but such power has been sustained as tending to improve service, morale, and efficiency. . . . There is no question but that, in general, such insurance has a desirable effect upon morale and mental state of the employees. . . ."

Question number (2) as presented in your letter, "Whether such contributions can be made under our present arrangement with TPEA and our insurance carrier, Republic National Life Insurance Company" is not amenable to a complete answer inasmuch as the details of your "present arrangement" are not set out.

However, in view of our answer to question number (1), it must follow that certain limitations be placed upon your arrangement with the Texas Public Employees Association.  TPEA is a private association of individuals which charges a fee for membership.  Being such, any state funds granted to this organization are subject to Section 51 of Article III, Constitution of Texas.

However, Subsection (a), Section 1, Article 3.51 of the Insurance Code, as amended by Senate Bill 294 does not grant any state funds to an association of public employees.  The statute merely authorizes an association of public employees to procure contracts insuring its employees and indicates it may be a group policyholder when the employees' contributions alone are involved.  Article 3.51 is devoid of any language which authorizes an association of public employees such as TPEA to procure group insurance contracts for its members or to be the policyholder of same, wherein state funds are to be utilized in the payment of the premiums.

You are therefore advised that when contributions for premium payments are to be made with state funds, the group policies must be procured by TEC (the employer) and the employer, as the policyholder, makes the contributions to the insurance company.

## S U M M A R Y

1.  The Texas Employment Commission may contribute with state funds to the premiums of its employees for group insurance under the provisions of Subsection (a) of Section 1 of Article 3.51 of the Insurance Code, as amended by S.B. 294, Acts of the 60th Legislature.

2.  When state funds are used as contributions to the premiums of group policies by the Texas Employment Commission, the Texas Employment Commission must procure the contract of insurance, be the policyholder, and pay the contributions to the insurance company.

Yours very truly,

CRAWFORD MARTIN
Attorney General of Texas

Prepared by Ray McGregor
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

A. J. Carubbi, Jr., Chairman
Staff Legal Assistant
W. O. Shultz, Co-Chairman
John Reeves
Sam Kelley
Roger Tyler
John Banks